COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Powell and Senior Judge Clements


JAMES AMOS ANDREW GARDNER

v.       Record No. 2661-09-3                    MEMORANDUM OPINION[*]
                                                  PER CURIAM
WASHINGTON COUNTY DEPARTMENT                       JUNE 22, 2010
   OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

(David L. Harmon, on briefs), for appellant.  Appellant submitting
on briefs.

(Gregory M. Stewart; James H. Preas, III, Guardian *ad litem* for the
minor children; Stewart Law Office, P.C.; Haugh & Preas, PLC, on
brief), for appellee.  Appellee and Guardian *ad litem* submitting on
brief.


        James Amos Andrew Gardner (father) appeals a decision terminating his parental rights to

his children.  Father argues that the trial court erred in terminating his parental rights where (1) the

removal of the children from the home did not result from any of father's acts and (2) the

Department of Social Services (the Department) failed to actively pursue relative placement with

father's mother.  Upon reviewing the record and briefs of the parties, we affirm the decision of

the trial court.

                                      BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Father and Kimberly Nelson, a/k/a Kimberly Fleming (mother), have four children - - J.G., W.G., H.G., and A.G.[1]  Beginning in December 2002, the family began receiving services from the Department due to issues regarding neglect, unsanitary living conditions, personal hygiene of the children, lack of cooperation by parents with service providers, and alleged drug abuse of a relative who lived with them at the time.  In 2005, both parents were charged with physical neglect of the children.  In 2007, father was again charged with physical abuse of the children.  In May 2007, father and mother separated.  Mother had custody, and father had supervised visitation.  In May 2007, the Department offered numerous services to mother, including ongoing social worker and homemaker services, in-home counseling, and case management and mentoring from Highlands Community Services.  Respite care was provided for the children, and J.G. attended special education classes.

On January 24, 2008, the Department removed the children from the home because of mother's lack of cooperation with service providers, unsanitary conditions of the home, poor hygiene of the children, lack of supervision, inappropriate and inconsistent day-care providers, failure to keep medical appointments, lack of discipline, and safety concerns.

The Department did not place the children with father because of his prior abuse and neglect charges.  On February 6, 2008, father petitioned the court for custody of the children, and the court requested a home study.  Initially, the court had safety concerns about father's house because of ongoing repairs.  Father later informed the court that the repairs were completed.  Another home study was conducted, and his home was deemed appropriate.  However, after learning that father was living with his girlfriend and her three children, the court ordered another home study on April 21, 2009.  Father's home was not approved because his girlfriend and her three children had moved in with him.  The girlfriend had child protective services

---

[1] We will refer to the children by their initials.

complaints against her. If father's children were placed with him in the house with the girlfriend and her three children, there would be too many people in the house. There also was concern that father and his girlfriend would not be able to appropriately supervise and parent his four children, who have special needs, and her three children. The court denied father's petition for custody.

Father has a history of physically abusing the children. During his visits with the children, he used inappropriate language in front of them, and he would often ignore them.

After the court denied his petition for custody, father stopped visiting the children and refused to participate in further services.

On November 9, 2009, the trial court terminated father's parental rights, and father timely noted his appeal.[2]

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

### Issue 1 – Termination of Parental Rights

Father argued that the trial court erred in terminating his parental rights because the children's removal from the home did not result from his actions.

---

[2] The trial court also terminated mother's parental rights. She appealed the decision. See Nelson v. Washington Co. Dep't of Soc. Servs., Record No. 2662-09-3 (Va. Ct. App. June 22, 2010).

The trial court terminated father's parental rights based on Code § 16.1-283(B)[3] and § 16.1-283(C)(2).[4] Although the children were not living with father at the time of the removal, his actions prevented them from coming into his care. The Department had been involved with the family since 2002, prior to mother and father's separation. Father had two previous charges of abuse and neglect. There was evidence that in 2007, father became upset with J.G. when he did not clean the dog's area. Father put the dog's collar around J.G. and chained him to the doghouse, so J.G. knew what it would be like to live in those conditions.

Despite going to parenting and anger management classes, father's behavior around the children did not change. Once the children were placed in foster care, father visited the children regularly at the Department. Father yelled and cursed at the children. He did not interact with them much during the visits. He showed no physical affection toward them. He refused to

---

[3] Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

[4] A person's parental rights may be terminated if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

change the youngest children's diapers, saying that it was the Department's job. Father was offered an opportunity to have unsupervised visits, but he came to the Department with a pickup truck that would not seat all four children. The Department offered to take the children to a location to visit with father, but he refused. On a subsequent visit, he came with a van which did not have seatbelts. He refused the Department's offers to take the children to a location for a visit and/or to supply a van with seatbelts.

Father was uncooperative and argumentative with the Department. He did not believe that his actions and how he treated the children were harmful to the children. He did not follow the Department's recommendations. He stopped visiting the children when his petition for custody was denied due to his choice of allowing his girlfriend, who had child protective services complaints against her, and her three children to move in with him.

Despite the services offered to father, his attitudes and demeanor did not change. The children all have special needs, which father was not able to meet. His housing was deemed inappropriate. At the time of the hearing, the children had been in foster care for almost twenty-two months.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court did not err in terminating father's parental rights.

Issue 2 – Relative Placement

Father argues that the trial court erred in terminating his parental rights because the Department failed to actively pursue relative placement with the paternal grandmother. Father

contends the Department did not investigate the paternal grandmother as a possible placement, even though she presented herself as an alternative placement.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

Unlike the grandmother in Sauer v. Franklin Co. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994), neither parent was living with the paternal grandmother.[5] The Department tried to contact the paternal grandmother on three separate occasions, but never spoke with her. The paternal grandmother presented herself to the Department and told the Department that her trailer could not accommodate the children. She contacted the Department about filing a petition for custody, but did not do so. She testified at the termination of parental rights hearing. She stated that her son-in-law and his oldest daughter were living with her. She also testified that she knew the children "were out of control."

The trial court received sufficient evidence to evaluate the paternal grandmother as a possible placement for the children. See Hawthorne v. Smyth Co. Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (although the Department did not investigate a relative, the relative testified at trial, so "the trial court was presented with evidence for its consideration as to the suitability" of placing the child with a relative before it ordered

---

[5] The paternal grandmother testified that mother had stayed with her "for a couple of weeks" and then moved to a different residence. Mother was not living with the paternal grandmother at the time of the hearing.

termination of the parent's rights).  The trial court did not err in terminating father's parental rights before investigating a relative placement.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>